CASE 45—ORDINARY—FEBRUARY 15, 1881.

# Olsen's adm'r v. Rich.

APPEAL FROM KENTON CIRCUIT COURT.

Although a public administrator resigns his office, he is still the representative of each and every estate committed to his hands before his resignation. He must administer such estates, and his sureties are bound for the faithful discharge of his duties as to each estate so committed to him.

ROBT. B. FISK FOR APPELLANT.
Appellant's brief withdrawn.

SIMMONS & SCHMIDT FOR APPELLEE.
When appellant resigned his office of public administrator, he vacated his position as administrator of Olsen, and the court properly dismissed the action. (Warfield v. Brand, 13 Bush, 88; Renfro v. Trent, 1 J. J. Mar., 604; Gray v. Grundy, 2 Ib., 133; Davenport v. Irvine, 4 Ib., 60; Gen. Stat., 454; Marshall v. Marshall, 4 Bush, 251; Gen. Stat., 443.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Section 47 of article 2 of chapter 39, General Statutes, provides, that "there shall be appointed in each county in this state, by the county court thereof, a discreet, fit person to act as administrator of decedents' estates of which there is no personal representative, and as guardian of such orphans.

as have none." Under this section of the statute, the county court of Kenton, on the 26th of August, 1875, by an order of that court, appointed the appellant public administrator, and the latter qualified as required by law.

On the 5th of December, 1877, by an order of the same court, he was appointed administrator of the estate of John Olsen, the order reciting: "Ordered, that L. J. Blakely, public administrator and guardian of Kenton county, be, and he is hereby, appointed administrator of the estate of John Olsen, deceased, more than three months having elapsed since his death, and no one having applied for letters of administration on his estate." In July, 1878, the appellant appeared in court and tendered his resignation as public administrator, which was accepted, and William Gray appointed a special commissioner "to make a settlement *with him of all trusts in his hands as administrator.*" After his resignation as public administrator, the appellant, on the 5th of October, 1878, instituted the present action as the administrator of the estate of John Olsen, and the court below, being of the opinion that his resignation of the office of public administrator having been tendered and accepted prior to the institution of the action, held that it was a surrender of all the trusts confided to him by reason of his office, and dismissed the action.

The appellant, by reason of his appointment and qualification as public administrator, was ordered to take charge of the effects of the decedent, and to act in every respect as if he had qualified by giving bond with surety as the personal representative of the particular estate. The general bond he had executed made his sureties responsible for the faithful discharge of his duties in administering each and all the estates committed to his care as the public administrator. It

was in fact the bond in each particular case; and after admin--
istering, either by an order of the court or taking charge of
the effects by reason of his being the public administrator,.
his resignation of that office did not relieve him or his sure--
ties from fully administering the estates under his control at
the time, and his successor in office cannot deprive him of
the right to fully administer an estate already in his hands,
or release his sureties by voluntarily assuming to relieve the
former administrator from responsibility.

He may be removed from office for cause shown, as is.
provided by section 48 of the same statute, or may resign
his trust after a settlement of his accounts, as provided by
section 46; but a resignation of his public office still leaves.
him the representative of each and every estate committed.
to his hands. He is no longer the public administrator, but
is the administrator of the estates in his hands unadminis-
tered, with the same liabilities and duties as an ordinary
administrator. He became such administrator in fact:
when ordered to take charge of the estate. Section 49,
article 2, provides, that ''the several county courts of the
commonwealth in which there is a public administrator and,
guardian, shall confide to him the administration on the
estates of deceased persons in all cases in which by law the
jurisdiction to grant letters testamentary or administrative
applies, if it shall appear, after the expiration of three months
from the death of the decedent, that no one will qualify as
executor, or apply for administration,'' &c. When this
estate was confided to the appellant as administrator, it was.
a personal trust. He was required to make an inventory
and settlement of the estate as the administrator of Olsen,
and not as the public administrator, nor was the appoint--
ment of his successor retroactive, so as to make him the-

Olsen's adm'r v. Rich.

administrator of all the estates that had been confided to the care of the appellant. Such a construction of the statute, besides multiplying the costs of administration, would lead to the greatest confusion in determining the liability of each of the personal representatives.

The successor of the public administrator may be required, by virtue of his office, to take charge of the estates upon which no administration has been had for three months after the death of the decedent, and where no administrator has been previously appointed and qualified; but if there is already an administrator, the county court has no power to remove him, except for the causes provided by the statute.

The public administrator is made the administrator of the particular estate by an order confiding it to him by the county court, and when undertaking to administer, he has no right to surrender the trust, unless his resignation is accepted by the court as required by the statute, but must proceed to a final settlement, and is liable on his bond on his failure to fully administer. The appellant never tendered his resignation as the administrator of Olsen, and was therefore the proper party to institute the action, and it was error on the part of the court below to dismiss it. The answer filed by the appellee, although containing much surplus matter, amounts to a denial of the negligence charged to have caused the death of the intestate. The history appellee gives of the caving in of the embankment or dirt constitutes no defense, and whether or not appellee was guilty of willful neglect is with the jury to determine. It is not necessary to notice the other errors assigned, as they are not prejudicial to the appellant.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.